AUSA: RRP

County: Whitman

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 29, 2024

SEAN F. McAVOY, CLERK

*In re Affidavit in Support of Criminal Complaint as to AARON AUNG ("AUNG")*

State of Washington )
 :ss
County of Whitman )

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Ethan Hawks, a Special Agent with the Federal Bureau of Investigation, having been duly sworn, hereby state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging AARON AUNG ("AUNG") with international parental kidnapping, a violation of 18 U.S.C. § 1204.

### SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the FBI's Seattle Field Office. I have been a Special Agent with the FBI since 2022. I have received training in interviewing and interrogation techniques, arrest procedures, search and seizure, computer crimes, search warrant applications, conducting physical surveillance, consensual monitoring, analyzing telephone and electronic pen register and caller identification, system data, basic narcotics investigations, drug identification, detection, interdiction, United States narcotics laws, and electronic and physical surveillance procedures at the Federal Bureau of Investigation Academy in Quantico, VA.

5. Prior to joining the FBI, I was employed with U.S. Customs and Border Protection, U.S. Border Patrol as a Patrol Agent starting June 10, 2019. During that time, I received training and experience in legal statutes and procedures, constitutional law, interviewing, report writing, and investigation techniques. In addition to basic law enforcement training, I have also received training in the following areas: law, investigative techniques, surveillance, tactics, and firearms, the daily work related to conducting these types of investigations, interviewing and interrogation techniques, arrest procedures, search and seizure, search warrant applications, conducting physical surveillance, consensual monitoring, interdiction, and United States narcotics laws.

6. As such, I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United

States empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

7. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein are not being relied on in reaching my conclusion that the requested warrant should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

8. I am investigating potential attempts and completed violations of 18 U.S.C. § 1204 regarding international parental kidnapping. That offense as well as relevant definitions are set forth below:

   a. 18 U.S.C. § 1204(a) prohibits any person from removing a child from the United States, or attempting to do so, with the intent to obstruct the lawful exercise of parental rights.

   b. 18 U.S.C. § 1204(b)(2) defines "parental rights" as the right to the physical custody of the child, whether joint or sole (and includes visiting rights); and whether arising by operation of law, court order, or legally binding agreement of the parties.

   c. 18 U.S.C. § 1204(c) states that it shall be an affirmative defense that 1. the defendant acted within the provision of a valid court order granting the defendant legal custody or visitation rights and that order was obtained pursuant to the Uniform Child Custody Jurisdiction Act or the

Uniform Child Custody Jurisdiction and Enforcement Act and was in effect at the time of the offense; 2. The defendant was fleeing an incidence or pattern of domestic violence, or 3. The defendant had physical custody of the child pursuant to a court order granting legal custody or visitation rights and failed to return the child as a result of circumstances beyond the defendant's control, and the defendant notified or made reasonable attempts to notify the other parent or lawful custodian of the child of such circumstances within 24 hours after the visitation period had expired and returned the child as soon as possible.

## STATEMENT OF PROBABLE CAUSE

9.   On May 29, 2024, at approximately 6:00 PM Pacific Standard Time (PST) Samara Harmon, hereinafter referred to as "Samara," conducted a custody exchange of Victim 1 to Victim 1's father AARON AUNG. Samara and AUNG maintain joint custody of Victim 1. The parenting plan that was established by the Second Judicial District of the State of Idaho determined that Victim 1 was to spend alternating weeks with her mother Samara and father AUNG. AUNG was to return Victim 1 to Samara on June 3, 2024 at the Pullman, Washington, Police Department, located in Whitman County within the Eastern District of Washington.

10.   On May 29, 2024, it was reported that AUNG's fiancé Nadia Cole, hereinafter referred to as "Nadia," had gone missing after she abruptly left the SeaTac Airport while departing on a family trip with her parents. Nadia's parents later learned that Nadia had been seen walking out of the airport alone. Several welfare checks were conducted by the Pullman Police Department at her residence in Pullman, Washington, but Nadia was not located. Investigators with Pullman Police Department contacted AUNG's parents Jaimes and Judith Aung in an attempt to

locate Nadia. Jaimes and Judith reported that AUNG had taken Victim 1 to Montana to go fishing with friends. AUNG's parents did not know where he was and was unaware if Nadia is with him.

11. On June 3, 2024, Samara arrived at Pullman Police Department for the anticipated custody exchange of Victim 1. AUNG and Victim 1 did not appear and the custody exchange did not occur. AUNG's parents had reported AUNG missing to Flathead County, Montana, Sheriff's Department when AUNG did not return from his fishing trip. Samara had not communicated with AUNG leading up to their custody exchange due to a court order restricting contact. Samara reported that AUNG had been abusive and was not paying child support and Samara was currently in the process with the court to criminally charge AUNG for not paying support.

12. Samara had previously informed investigators with the Pullman Police Department that AUNG could have been driving, among other vehicles, a Cadillac which was registered to AUNG's father Jaimes. Agents with the FBI and Border patrol obtained photographs and video of the Cadillac crossing the United States southern border into Mexico on June 1, 2024 at the Andrade, California, Port of Entry.

13. On July 4, 2024, AUNG, Victim 1, and Nadia were contacted by Mexican officials in Mexico. Nadia was deported from Mexico to the United States; AUNG and Victim 1 remained in Mexico at that time.

14. On July 7, 2024, AUNG and Victim 1 were contacted by Mexican officials near the United States-Mexico international border in Nogales, Mexico. AUNG and Victim 1 were taken by Mexican officials to the port of entry near Nogales, Arizona, where they were presented to U.S. Customs and Border Protection (CBP) officials. CBP took custody of AUNG and Victim 1, and detained AUNG on his outstanding felony warrant issued out of Whitman County (Washington) for custodial interference first degree in case number 24-1-00084-38.

15. Your affiant understands that when AUNG was contacted in Mexico on July 4th as well as on July 7th, he was in possession of the Cadillac registered to AUNG's father, Jaimes.

## CONCLUSION

16. Based on the facts stated above, I respectfully submit that there is probable cause to believe that AUNG was in violation of 18 U.S.C. § 1204, international parental kidnapping. I respectfully request that the Court issue a criminal complaint and a warrant for their arrest.

_____
ETHAN HAWKS, Special Agent
Federal Bureau of Investigation

Sworn to telephonically and signed electronically on this 29th day of July 2024. *[JAG]*

_____
James A. Goeke
United States Magistrate Judge